UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

CASE NUMBER:

SMOOTHIE KING FRANCHISES, INC.

    Plaintiff,

v.

THE DELANEY GROUP, INC.,
JEFFREY MCMULLEN and
MARGARET MCMULLEN,

    Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Smoothie King Franchises, Inc. ("SKFI") sues Defendants, the Delaney Group, Inc. (the "Delaney Group") Jeffrey McMullen and Margaret McMullen (collectively, "Defendants"), and states:

1. This is an action to enjoin Defendants' unauthorized use of SKFI's valuable trademarks and service marks in connection with the unlawful operation of two SMOOTHIE KING® Stores. Additionally, this is an action for breach of Franchise Agreements for Defendants' failure to operate their SMOOTHIE KING® Store in accordance with the standards and specifications required by SKFI and for failure to comply with the post-termination covenants in the Franchise Agreements.

## THE PARTIES

2. Plaintiff SKFI is a Louisiana corporation with its principal place of business in the State of Louisiana.

3. Upon information and belief, Defendant the Delaney Group is a Georgia

corporation with its principal place of business in the State of Georgia.

4. Upon information and belief, Defendant Jeff McMullen is a citizen and resident of the State of Georgia.

5. Upon information and belief, Defendant Margaret McMullen is a citizen and resident of the State of Georgia.

## JURISDICTION AND VENUE

6. SKFI operates and franchises stores throughout the United States. SKFI's franchise operations are conducted and supervised from its headquarters located in Covington, Louisiana. The parties have carried on a continuous course of direct communications by mail and by telephone through SKFI headquarters in Covington, Louisiana.

7. The course of dealing between SKFI and its franchisees, including Defendants, shows that decision-making authority is vested in SKFI's headquarters in Covington, Louisiana.

8. Defendants negotiated with SKFI in Louisiana for the acquisition of long-term franchise agreements with the knowledge that they would benefit from their affiliation with SKFI.

9. Defendants voluntarily entered into franchise relationships with SKFI which envisioned continuing and wide-reaching contacts with SKFI in Louisiana, including regulation of their franchised business from SKFI's headquarters in Louisiana.

10. Defendants have purposefully availed themselves of the benefits and protections of Louisiana law by entering into franchise agreements with SKFI which expressly provide that Louisiana law will govern any disputes among the parties.

11. Defendants have breached contracts which were to be performed in Louisiana due to their failure to install POS Systems as required pursuant to the franchise agreement and

standards and specifications developed and set forth by SKFI in Louisiana. Defendants have also breached the franchise agreement by continuing to use the SKFI Marks post-termination. These breaches have caused damage to SKFI in Covington, Louisiana.

12. This Court has jurisdiction over this action based upon:

(a) Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338 (a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and

(b) 28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' common law unfair competition and Defendants' breach of contract.

13. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) and the forum selection clauses agreed to by the parties in their written agreements.

14. Defendants have agreed in writing that in any litigation to enforce the terms of the Franchise Agreement between SKFI and Defendants, SKFI, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

15. SKFI has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between SKFI and Defendants.

16. All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## THE SKFI MARKS

17. To identify the source, origin and sponsorship of SKFI's facilities, products and services, SKFI has extensively employed, caused to be advertised and publicized throughout the

United States certain distinctive symbols as trademarks and service marks (the "SKFI Marks"). SKFI was the first to adopt and use the SKFI Marks as trademarks and service marks, and all right, title and interest to the SKFI Marks and the design, decor and image of SMOOTHIE KING® Stores remain vested solely in SKFI.

18. SKFI operates and franchises SMOOTHIE KING® Stores using the SKFI Marks on signs, menu boards, posters, uniforms, cups and other items, and in advertising to the public through television, radio and print media.

19. Set forth below is an abbreviated listing of the SKFI Marks registered in the United States Patent and Trademark Office:

| Reg. No. | Mark | Issue Date |
| --- | --- | --- |
| 1,874,101 | CARIBBEAN WAY | 1995 (renewed through 2014) |
| 2,832,936 | GLADIATOR | 2004 (renewed through 2014) |
| 2,948,514 | GLADIATOR | 2005 (renewed through 2015) |
| 2,709,982 | STRAWBERRY KIWI-BREEZE | 2003 (renewed through 2013) |
| 1,861,112 | POWER PUNCH PLUS | 1994 (renewed through 2014) |
| 1,825,363 | MUSCLE PUNCH | 1994 (renewed through 2014) |
| 1,845,979 | BE GOOD TO YOURSELF! | 1994 (renewed through 2013) |
| 2,036,826 | SMOOTHIE KING | 2007 (renewed through 2017) |
| 1,840,792 | SMOOTHIE KING | 1994 (renewed through 2014) |
| 3,542,738 | SMOOTHIE KING | 2008 (renewed through 2018) |

20. The registrations of the SKFI Marks are currently in full force and effect, and SKFI has given notice to the public of the registration of the SKFI Marks as provided in 15 U.S.C. §1111.

21. Pursuant to franchise agreements between SKFI and its franchisees, SKFI grants its franchisees a limited license and authority to use and display the SKFI Marks, but only in such manner, and at such locations and times, as are expressly authorized by SKFI. In no event is a franchisee authorized to use the SKFI Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all SKFI franchise agreements, including Defendants' SMOOTHIE KING® Franchise Agreement with SKFI.

22. SKFI's products bearing the SKFI Marks are offered and sold in interstate commerce.

23. SKFI and its franchisees have spent millions of dollars in the United States and abroad advertising and promoting SKFI's stores, services and products.

24. The substantial investment made in the SKFI Marks has resulted in valuable good will for the SKFI Marks and for the stores, products and services bearing those marks.  SKFI products and services have met with popular approval and, as a result of SKFI's extensive sales, advertising, promotion and publicity, the public is familiar with the SKFI Marks.  The products and services associated with the SKFI Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with SKFI.

## THE SMOOTHIE KING SYSTEM

25. SKFI has developed a comprehensive store operating system for all SKFI franchisees in order to protect the image of SMOOTHIE KING® Stores and to ensure uniform, high quality standards.  The detailed specifications and procedures of the "Smoothie King System" are set forth in SKFI's confidential operations manual, other manuals and other writings issued by SKFI from time to time, such as quality control requirements maintained on SKFI's intranet (the "Manuals").

26. Every SKFI franchisee is required by its franchise agreement to operate its franchise in accordance with the specifications and procedures contained in the Franchise Agreement, the Manuals or otherwise in writing.  The Manuals and other writings set forth in detail the mandatory SKFI store operating standards, specifications and procedures, including rules governing areas such as food preparation and handling, cleanliness, health, sanitation, quality and speed of service.  In addition to these strict quality, service and cleanliness

requirements, the Manuals and other writings prescribe specified training procedures to ensure that these requirements are met. The Manuals and other writings are confidential SKFI documents which a franchisee is permitted to have only during the term of the franchise agreement.

27. SKFI offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including training for various levels of personnel. This enables SKFI to safeguard the integrity of SMOOTHIE KING® Stores, the Smoothie King System and the SKFI Marks.

28. Integral to SKFI's compliance and assistance program are periodic inspections and consultations undertaken by SKFI personnel specially trained to observe and advise in all areas of store operating procedure. Pursuant to SKFI's store visitation process, action plans are issued after a store inspection is conducted. These action plans serve as a training opportunity for the franchisee and as a quality assurance process for SKFI to ensure that critical quality, service and cleanliness standards are being met by the franchisee. Each SMOOTHIE KING® Franchise Agreement confers upon SKFI the right to enter the store premises to perform this vital function.

29. As a result of its substantial expenditures of money and effort in developing and implementing the Smoothie King System, SKFI has established a high reputation and a positive image with the public as to the quality of products and services available at SMOOTHIE KING® Stores, which reputation and image have been, and continue to be, valuable assets of SKFI. SKFI strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations and its careful supervision over the manner and quality of its store service.

### **SKFI'S AGREEMENTS WITH DEFENDANTS**

**Franchise Agreements**

**The Delaney Group Franchise Agreement**

30. Defendant Delaney Group owned and operated one (1) store as a franchised SMOOTHIE KING® Store (the "SK Store #64") in accordance with the terms and conditions of a SMOOTHIE KING® Franchise Agreement (the "Delaney Group Franchise Agreement").

31. The Delaney Group Store's number, location and the date of the Franchise Agreement are set forth below.

| Store No. | Store Location | Date of Franchise Agreement |
| --- | --- | --- |
| SK Store # 64 | 5561 Chamblee Dunwoody Road Dunwoody, GA 30338 | September 29, 2006 |

**The McMullen Franchise Agreement**

32. Defendants Jeffrey McMullen and Margaret McMullen owned and operated one (1) store as a franchised SMOOTHIE KING® Store ("SK Store #255") in accordance with the terms and conditions of a SMOOTHIE KING® Renewal Franchise Agreement (the "McMullen Franchise Agreement") (The SK Store #64 and SK Store #255 shall, collectively, be referred to as the "Stores") (The "Delaney Group Franchise Agreement" and "McMullen Franchise Agreement" shall, collectively, be referred to as the "Franchise Agreements").

33. The SK Store #255's number, location, and the date of the McMullen Franchise Agreement are set forth below.

| Store No. | Store Location | Date of Franchise Agreement |
| --- | --- | --- |
| SK Store # 255 | 6309 Roswell Road Sandy Springs, GA 30328 | December 21, 2010 |

### Defendants' Obligations

34. Pursuant to the terms of the Franchise Agreements, Defendants acknowledged and agreed that abiding by every detail of the Smoothie King System is important to maintain the high and uniform operating standards in the Smoothie King System, to increase the demand for the services and products sold by all franchisees in the Smoothie King System, and to protect the reputation and goodwill of the SKFI Marks.

35. The Franchise Agreements contain provisions obligating Defendants to operate the Stores in strict conformity with such methods, procedures, standards and specifications as established by SKFI from time to time in the Manuals or otherwise in writing.

36. In addition, under the terms of the Franchise Agreements, Defendants are obligated to install and use in and about the Stores only such equipment, including point-of-sale computer programs and equipment ("POS Systems"), which strictly conform to the standards and specifications for SMOOTHIE KING® Stores as set forth by SKFI in the Manuals and otherwise in writing and which SKFI has developed or selected for the Smoothie King System. Defendants are also obligated by the Franchise Agreement to accept and comply with modifications, revisions and additions to the Manuals by SKFI.

### Guaranty

37. Pursuant to a written guaranty, Defendants, Jeff McMullen and Margaret McMullen, jointly and severally, unconditionally and irrevocably personally guaranteed to SKFI the performance of each and every obligation of the Delaney Group (the "Guaranty").

### DEFAULT AND TERMINATION

### Default

38. The Franchise Agreements contain provisions regarding default and establishing the parties' rights and obligations in the event of a default by Defendants under the Franchise Agreements.

39. The relevant terms of the Franchise Agreements provide that Defendants' failure to comply with any provision of the Franchise Agreements is a default of the Franchise Agreements. The Franchise Agreements further provide that if an act of default occurs and Defendants fail to cure the default after any required notice and within the cure period applicable, SKFI may, at its option terminate the Franchise Agreements.

40. Pursuant to the terms of the Franchise Agreements, Defendants acknowledged and agreed that abiding by every detail of the Smoothie King System is important to maintain the high and uniform operating standards in the Smoothie King System, to increase the demand for the services and products sold by all franchisees in the Smoothie King System, and to protect the reputation and goodwill of the SKFI Marks.

41. The Franchise Agreements contain provisions obligating Defendants to operate the Stores in strict conformity with such methods, procedures, standards and specifications as established by SKFI from time to time in the Manuals or otherwise in writing.

42. Under the terms of the Franchise Agreements, Defendants are obligated to use in the Stores the software and/or cash register system, including all existing or future communication or data storage systems, components thereof and associated service, which SKFI develops or selects (the "POS Systems").

43. In July of 2007, SKFI issued and communicated to all franchisees, including Defendants, its 2007 POS Technology Directive requiring all SKFI franchisees to purchase and install certain POS Systems at their respective SMOOTHIE KING® Stores.

44. The POS Systems are a critical component in the operation of SMOOTHIE KING® Stores and the Smoothie King System in that they provide all SKFI franchisees with the benefits of: (1) increased speed of service; (2) loss prevention and reporting module programs; (3) invoicing and accounts receivable module programs; (4) automated recipe systems that facilitate increased smoothie consistency; (5) additional labor management tools; (6) accounting interface programs with export capabilities; (7) integrated team member messaging systems; (8) integrated merchant services systems; (9) automated e-mail reporting programs; and (10) reduced corporate reporting requirements.

45. In addition, the POS Systems provide a consistent base of information to SKFI which allows for better product sales analysis and more effective product and promotion activities. As a result, standardized POS Systems have immediate operational benefits to SMOOTHIE KING® Stores and the Smoothie King System.

46. During the period following July of 2007, SKFI notified all SKFI franchisees, including Defendants, on multiple occasions that they were required to install the POS Systems.

47. Notwithstanding the multiple notices to the Smoothie King System that the franchisees were required to install the POS Systems, Defendants failed to install the POS Systems.

48. SKFI extended the POS compliance deadline for all SKFI franchisees, including Defendants, through January 7, 2011.

49. Defendants nonetheless failed to install the required POS Systems by January 7, 2011 as required by the Franchise Agreements. Defendants' use of POS equipment not approved by SKFI and their failure to comply with SKFI's requirements for standards of uniformity of operation constitute a material default of the Franchise Agreements.

50. By letters dated March 4, 2011, SKFI notified Defendants that they were in default of their obligations under the Franchise Agreements for failing to install the required POS Systems at the Stores and demanded that they cure the default within the thirty (30) day cure period provided under the Franchise Agreements (the "Default Notices").

51. Defendants failed to cure the defaults as set forth in the Default Notices.

52. Accordingly, the Franchise Agreements terminated effective at 11:59 p.m. on July 1, 2011.

### Termination

53. Terminated franchisees are prohibited from identifying themselves as either a current or former SMOOTHIE KING® Franchisee from using any of SKFI's trade secrets, promotional materials, the SKFI Marks or any mark confusingly similar. Terminated franchisees are further required, upon termination or expiration of their SMOOTHIE KING® Franchise Agreement, to immediately make such removals or changes in signs and the building as SKFI shall request so as to effectively distinguish the building and premises from its former appearance and from any other SMOOTHIE KING® Store.

54. In violation of the Franchise Agreements, Defendants have continued to hold themselves out to the public as operating genuine and authorized SMOOTHIE KING® Stores by continuing to use the SKFI Marks at the Stores subsequent to the termination of the Franchise Agreements. In so doing, Defendants are infringing upon the SKFI Marks and breaching their explicit obligations under the Franchise Agreements.

55. Additionally, Defendants have not returned the Manuals to SKFI as required by the Franchise Agreements.

### LIKELIHOOD OF CONSUMER CONFUSION AND DECEPTION

56. Defendants have not tendered to SKFI or removed all SMOOTHIE KING® signs, logos, menu boards, posters, uniforms, cups and other items bearing the SKFI Marks, name, symbols or slogans, or which are otherwise identified with SMOOTHIE KING® Stores and are located at the Store.

57. Defendants' continued use and display of the SKFI Marks or any items associated with the SMOOTHIE KING® name, symbols or slogans at the Stores is without SKFI's license or consent, and has caused or is likely to cause mistake, confusion or deception in the minds of the public as to source, affiliation and sponsorship.  Upon seeing the familiar SKFI Marks, through Defendants' unauthorized use thereof, consumers will be deceived into concluding that the products and services sold at the Stores are made or supplied by SKFI are prepared in the prescribed SKFI manner and subject to SKFI's supervision, are sponsored or endorsed by SKFI and bear the SKFI Marks pursuant to SKFI's authority and permission.  Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize the Stores in reliance on the goodwill, reputation and appeal of SKFI.

58. By reason of the foregoing, SKFI has suffered damages, in an amount presently unknown yet substantial.  SKFI no longer is the source or sponsor of the Stores and does not endorse said Stores, or the products and services provided therein, has not authorized Defendants to use the SKFI Marks to identify the terminated franchise facilities, products or services, and has protested expressly against such use.

59. By virtue of termination of the Stores, SKFI is unable to control the nature and quality of the goods and services that Defendants provide at the Stores.

60. SKFI will suffer serious, immediate and irreparable harm if Defendants' willful infringement of the SKFI Marks is not immediately enjoined.  SKFI's goodwill and reputation

will suffer drastically by virtue of the public's identification of SKFI with the management and operation of the Stores. SKFI exercises strict quality control over every phase in the marketing of SMOOTHIE KING® products and services, from specification of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation and quality of service. The carefully nurtured image which SKFI now enjoys will be irretrievably injured by any association with the Stores, which no longer is subject to SKFI's control and supervision.

61. Defendants' sale of products and services under the SKFI Marks at the Stores poses an immediate threat to the distinct, exclusive image SKFI has created at great expense for its franchisees. SMOOTHIE KING® Stores, services and products are known by the SKFI Marks which are emblematic of their distinctive source. SMOOTHIE KING® Stores enjoy a special appeal to consumers which will be diluted by the existence of infringing stores with products and services bearing the distinctive SKFI Marks. The intangible, but commercially indispensable, value that the SMOOTHIE KING® Stores now enjoy will be severely undermined by the operation of the Stores, which makes unauthorized use of the SKFI Marks.

62. Consumer confusion as to the source or sponsorship of a store bearing the SKFI Marks will be attended not only by an inevitable loss of product distinctiveness, image, and goodwill, but will also cause a diversion of sales from SKFI. The economic injury to SKFI resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

## COUNT I – LANHAM ACT INFRINGEMENT
### (AGAINST DEFENDANTS)

63. SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

64. Defendants' acts constitute infringements of SKFI's registered trademarks and

service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

### COUNT II – LANHAM ACT FALSE DESIGNATIONS
### (AGAINST DEFENDANTS)

65. SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

66. Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### COUNT III - COMMON LAW TRADEMARK INFRINGEMENT
### (AGAINST DEFENDANTS)

67. SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

68. Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

### COUNT IV - COMMON LAW UNFAIR COMPETITION
### (AGAINST DEFENDANTS)

69. SKFI re-alleges Paragraphs 1 through 62 above as if fully set forth herein.

70. Defendants' acts constitute unfair competition under the common law.

### COUNT V – BREACH OF THE DELANEY GROUP FRANCHISE AGREEMENT
### (AGAINST DEFENDANT DELANEY GROUP)

71. SKFI re-alleges Paragraphs 1 through 31 and 34 through 60 above as if fully set forth herein.

72. Defendant Delaney Group has not installed the POS Systems at the SK Store #64 as required under the Delaney Group Franchise Agreement by the deadline imposed by SKFI.

73. SKFI has made repeated demands for compliance with this deadline.

74. Delaney Group's failure to install the POS Systems as obligated is a breach of the Delaney Group Franchise Agreement.

75. This breach has directly and proximately caused loss and damage to SKFI.

76. Delaney Group's operation of the SK Store #64 after July 1, 2011 is also a breach of the Delaney Group Franchise Agreement. This breach has directly and proximately caused loss and damage to SKFI.

### COUNT VI -BREACH OF THE MCMULLEN FRANCHISE AGREEMENT
### (AGAINST DEFENDANTS JEFFREY MCMULLEN AND MARGARET MCMULLEN)

77. SKFI re-alleges Paragraphs 1 through 29 and 32 through 60 above as if fully set forth herein.

78. Defendants Jeffrey McMullen and Margaret McMullen have not installed the POS Systems at SK Store #255 as required under the McMullen Franchise Agreement by the deadline imposed by SKFI.

79. SKFI has made repeated demands for compliance with this deadline.

80. Defendants Jeffrey and Margaret McMullen's failure to install the POS Systems as obligated is a breach of the McMullen Franchise Agreement.

81. These breaches have directly and proximately caused loss and damage to SKFI.

82. Defendant Jeffrey and Margaret McMullen's operation of SK Store #255 after July 1, 2011 is also a breach of the McMullen Franchise Agreement. This breach has directly and proximately caused loss and damage to SFI.

### COUNT VI – BREACH OF GUARANTY AGREEMENT
### (AGAINST JEFF MCMULLEN AND MARGARET MCMULLEN)

83. SKFI re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

84. Defendant the Delaney Group has not installed the POS Systems as required under the Delaney Group Franchise Agreement by the deadline imposed by SKFI.

85. Although SKFI has made repeated demands for compliance with this deadline, the required POS Systems have not been installed.

86. Pursuant to the Guaranty, Defendants, Jeffrey McMullen and Margaret McMullen, jointly and severally, unconditionally and irrevocably guaranteed the performance of, *inter alia*, all obligations and liabilities of the Delaney Group arising under the Delaney Group Franchise Agreement should the Delaney Group fail to perform such obligations.

75. The failure of Jeffrey McMullen and Margaret McMullen to ensure that the Delaney Group installed the POS Systems at SK Store #64 as obligated by the Delaney Group Franchise Agreement or perform the obligations themselves constitutes breaches of the Guaranty.

76. As a direct and proximate result of the breach of the Guaranty, SKFI has been damaged.

77. The operation of the SK Store #64 after July 1, 2011, also is a breach of the Guaranty. This breach has also directly and proximately caused loss and damage to SKFI.

## DEMAND FOR ATTORNEYS' FEES

87. The Franchise Agreements at issue in this litigation provides that the prevailing party is entitled to its attorneys' fees and costs. Pursuant to these provisions, SKFI hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Smoothie King Franchises, Inc. demands judgment against Defendants, the Delaney Group, Inc., Jeffrey McMullen and Margaret McMullen, as follows:

1. For a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants, and all persons acting on their behalf, in concert with them, or under their control, from:

    (a) manufacturing, packaging, distributing, selling, advertising, displaying or

promoting any product or service bearing any of the SKFI Marks, or any colorable imitation thereof at the Stores;

(b) displaying or using any of the SKFI Marks to advertise or promote the sale of, or to identify, the Stores, or any products or services provided therein; and

(c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Stores and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized or approved by SKFI.

2. For a temporary restraining order, preliminary injunction and permanent injunction directing Defendants, and all persons acting on their behalf, in concert with them, or under their control, to:

(a) recall and deliver up to SKFI all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, any of the SKFI Marks, or any colorable imitation of the SKFI Marks;

(b) recall and deliver up to SKFI all copies and editions of the Manuals that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing store operating instructions, store business practices or plans of SKFI;

(c) allow SKFI, at a reasonable time, to enter the premises of the Stores and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from their appearance as SMOOTHIE KING® Stores;

(d) account and pay over to SKFI all gains, profits and advantages derived by Defendants from their trademark and service mark infringement, breach of contract and unfair

competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117, and by the controlling principles of common law.

3. For money damages, plus three times additional actual damages SKFI has sustained by reason of Defendants' trademark and service mark infringement, breach of contract and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

4. For punitive damages because of the willful nature of Defendants' actions;

5. For pre-judgment interest and SKFI's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreement and, because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

6. For an order enjoining Defendants from operating a business that distributes, markets or sells, at wholesale or retail, any nutritional drinks or general nutrition products, or any other related business that is competitive with SKFI, within the market area of the Stores or any other SMOOTHIE KING® Store in existence or planned as of the termination of the Agreement for a two-year period;

7. For an order directing Defendants to file with the Court, and to serve on SKFI's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

8. For all costs, disbursements and expenses of this action; and

9. For all such other relief as this Court may deem just and proper.

Dated this 5th day of July, 2011.

Respectfully submitted,

s/ James M. Garner

_____
Leopold Z. Sher
lsher@shergarner.com
Louisiana Bar No.: 12014
James M. Garner
jgarner@shergarner.com
Louisiana Bar No.: 19589
Sharonda R. Williams
swilliams@shergarner.com
Louisiana Bar No.: 28809
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone:  (504) 299-2100
Facsimile:  (504) 299-2300

10455-006/#7